**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**(SOUTHERN DIVISION)**

RICHARD SINGLETON, JR., on behalf
of himself and all others similarly situated,                Civil Action No. _____

               Plaintiff,

     vs.

WEST SHORE BANK CORP.,

               Defendant.

## CLASS ACTION COMPLAINT FOR DAMAGES
## AND JURY DEMAND

     COMES NOW PLAINTIFF, RICHARD SINGLETON ("Plaintiff"), on behalf of himself and all persons similarly situated, and states and alleges as follows:

### INTRODUCTION

1.     Plaintiff brings this action on behalf of himself and a Class of all similarly situated consumers against WEST SHORE BANK, CORP ("Defendant") arising from Defendant's routine policy and practice of charging its customers multiple Overdraft or Returned Item Fees for a single transaction.

2.     Overdraft fees represent one of the biggest profit centers for banks, stemming from practices susceptible to high levels of abuse which pose the largest burden on consumers. For example, investigations undertaken by the Consumer Financial Protection Bureau ("CFPB") revealed that some banks intentionally create confusion for their accountholders regarding the terms of their overdraft policies, intentionally obscure how fees are charged for overdraft and insufficient funds transactions, and design their accountholder application and onboarding process

1

to allow the banks to capitalize on this confusion. This confusion allows banks to maximize the number of overdraft fees they can charge leading directly to increased revenue for the bank. *See* Ashlee Kieler, *CFPB Says TCF Bank Made Millions From Misleading Overdraft Practices*, Consumerist.com (Jan. 19, 2017), https://consumerist.com/2017/01/19/cfpb-says-tcf-bank-made-millions-from-misleading-overdraft-practices/; *Consumer Financial Protection Bureau Orders Santander Bank to Pay $10 Million Fine for Illegal Overdraft Practices* (July 14, 2016), https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-orders-santander-bank-pay-10-million-fine-illegal-overdraft-practices/.

3.    This increased revenue source, however, creates a disproportionate impact on consumers living in the lower socio-economic levels of the Country. For example, the Center for Responsible Lending reported that, "[o]verdraft fees often impose a great burden on those already living paycheck to paycheck, struggling to make ends meet." *Center for Responsible Lending, Unfair Market: The State of High-Cost Overdraft Practices in 2017* (August 2018), https://www.responsiblelending.org/sites/default/files/nodes/files/research-publication/crl-unfair-market-overdraft-l-aug2018.pdf.

4.    Historically, overdraft fees represent a substantial revenue generator for financial institutions. In 2013 alone, a survey by Moebs Services, Inc. found that certain financial institutions generated $31.9 billion in overdraft revenue.[1] As banks continued their abusive practices of pushing overdraft products, "the Federal Reserve Board enacted certain regulatory changes in 2009, including requiring that bank customers must 'opt in' to bank overdraft products

---

[1] *See* How Banks Sell Overdraft 1 (July 2014) (available at http://calreinvest.org/wp-content/uploads/2018/09/Report_How_Banks_Sell_Overdraft_Results_of_Overdraft_Mystery_Shopping_in_Four_Key_States.pdf).

that may be triggered by ATM withdrawals or debit card purchases."[2] These regulations were specifically designed to protect consumers from abusive and confusing banking practices.

5.      Undeterred by these new regulations, Banks found new ways to keep the overdraft machine churning: charge multiple overdraft fees for a single item or transaction without a customer's consent—all while promising in their account agreements that a single item (or transaction) would only be subject to a single overdraft fee.

6.      In this case, Defendant contracted with Plaintiff to charge one Overdraft or Returned Item Fee for a single "item" or "transaction" that caused their account to become negative. *See* Terms and Conditions of Your Account and Fee Schedule (collectively, the "Account Contract"), attached hereto as Exhibits A and B.

7.      Notwithstanding these contractual provisions, which limit the number of Overdraft or Returned Item Fees Defendant may charge, Defendant routinely charged Plaintiff and the Class multiple Overdraft or Returned Item Fees for a single item or transaction. In doing so, Defendant breached its contractual promises and violated the covenant of good faith and fair dealing.

8.      As a direct and proximate cause of Defendant's policies and practices, Plaintiff and the Class were injured by Defendant in an amount to be determined at trial. On behalf of himself and the Class, Plaintiff seeks damages for Defendant's violations as set forth more fully below.

## PARTIES

9.      Richard Singleton, Jr. is a resident of the City of Ludington, County of Mason, Michigan, and held a checking account with Defendant. At the time Plaintiff opened his checking and savings accounts, he entered into Defendant's corresponding Account Contract which set forth the terms of his banking relationship with Defendant. *See* Exhibits A and B.

---

[2] *Id.* at 1.

10.     Defendant is engaged in the business of providing banking services to consumers, including Plaintiff and the Class. Defendant operates at least eleven (11) office located throughout Michigan. Upon information and belief, Defendant's headquarters is located at 201 W. Loomis Street, P.O. Box 627, Ludington, MI 49431-0627.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this District, and pursuant to § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff' claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

I.   **DEFENDANT CHARGES ITS CUSTOMERS OVERDRAFT OR RETURNED ITEM FEES IN EXCESS OF THOSE PROVIDED FOR IN THE ACCOUNT CONTRACT.**

   A.   *Defendant's Account Contract.*

13.     Defendant requires its customers, including Plaintiff and the Class, to agree to its Account Contract at or around the time an account is opened.  *See* Exhibit A.

14.     Like other banks, Defendant's Account Contract allows it to assess an Overdraft or Returned Item Fee when a withdrawal is attempted against a negative balance.

15.     Defendant's Account Contract provides, under the "withdrawal" section: "Unless clearly indicated otherwise on the account records, any of you [accountholders], *acting alone*, who signs to open the account or has authority to make withdrawals may withdraw or transfer all or

any part of the account balance at any time." *See* Exhibit A at 2. The plain language of the Account Contract limits who may actually authorize a "withdrawal"—in the case, the accountholder. Specifically, the Account Contract does not give any other individual or entity "the authority to make withdrawals" from an accountholder's account or the authority to "transfer all or any part of the account balance at any time." *See id.* Notwithstanding this plain language, Defendant systematically attempted multiple withdrawals that were not "authorized" by Plaintiff or the Class. In do so, Defendant unlawfully profited off these contractual violations by charging Plaintiff and the Class multiple Overdraft or Returned Item Fees for the same item or transaction when attempted against a negative balance.

16.    Defendant's Overdraft and Returned Item Fees (labeled "Non-sufficient (NSF) Funds") are set forth in its Fee Schedule, attached hereto as Exhibit B. The Fee Schedule directs that Defendant can collect a single $35.00 Overdraft Fee "Per Item Paid" or a Non-Sufficient Funds Fee (i.e., a Returned Item Fee) "Per Item Returned," stemming from a single item or transaction authorized by an accountholder." *See* Exhibit A at 2; B at 1. Defendant's Account Contract specifically and ubiquitously states "per item" in the singular, and nothing implies, let alone states, that "per item" is meant to denote the plural. In short, nothing in the Account Contract entitles Defendant to charge multiple Overdraft or Returned Item Fees stemming from a single item or transaction.

17.    By its plain terms, Defendant's Account Contract means it may only charge its customers *one* Overdraft or Returned Item Fee for a single item or transaction. In fact, nothing in the contract explicitly entitles Defendant to charge multiple Overdraft or Returned Item Fees for the same item or transaction.

18.    Despite the Account Contract's plain language, Defendant adopted a uniform policy and practice of charging its customers, including Plaintiff and the Class, more than one Overdraft or Returned Item Fee for the same item or transaction when reprocessed or "retried" against a negative balance.

19.    Specifically, Defendant charges an Overdraft or Returned Item Fee when its accountholders first authorize a transaction against a negative balance, and then an additional Overdraft or Returned Item Fee when *the same item or transaction* is reprocessed or "retried" without the accountholder's authorization or knowledge against a negative balance.

20.    Specifically, rejected payments are "retried" and, in the event the accountholder's available balance does not cover the "retried" payment, Defendant charges Plaintiff and the Class an additional Overdraft or Returned Item Fee. Because these "retry" payments were not initiated by the accountholder, they should not have been retried a second (or third) time. Further, because these "retry" payment stem from the same item or transaction already attempted, they should not have been subject to an additional Overdraft or Returned Item Fee.

21.    Defendant breached its contract when it charged Overdraft or Returned Item Fees for "retried" payments stemming from a single item or transaction which were not initiated by the accountholder—thus charging more than one Overdraft or Returned Item Fee for a single item or transaction.

22.    Defendant's Account Contract never disclosed Defendant's policy and practice of charging more than one Overdraft or Returned Item Fee for the same item or transaction.

**B.    *Defendant Charges Unauthorized Overdraft or Returned Item Fees for Unauthorized Purchases.***

23.    By its plain terms, Defendant's Account Contract means it may only allow an authorized individual to initiate a withdrawal from the account. *See* Exhibit A at 2.

24.     Despite the plain language of Defendant's Account Contract, Defendant adopted a uniform policy and practice of allowing unauthorized withdrawals to the accounts of Plaintiff and the Class, resulting in more than one Overdraft or Returned Item Fee for the same item or transaction not initiated by the accountholder.

25.     Specifically, Defendant charges an Overdraft or Returned Item Fee when its accountholders first authorize an item or transaction against a negative balance, and then an additional Overdraft or Returned Item Fee when *the same item or transaction* is reprocessed or "retried" without the accountholder's authorization against a negative balance. Because these "retry" payments were not initiated by the accountholder, they should not have been retried a second (or third) time. Further, because these "retry" payment stem from the same item or transaction already attempted, they should not have been subject to an additional Overdraft or Returned Item Fee

26.     Defendant breached its contract when it charged Overdraft or Returned Item Fees for "retried" payments stemming from a single transaction which were not authorized or initiated by the accountholder—thus charging more than one Overdraft or Returned Item Fee for a single item or transaction since Defendant's Account Contract indicates that an accountholder will only be charged *one* Overdraft or Returned Item Fee "per item" or transaction in which the *accountholder* authorizes payment which exceeds the available balance in the accountholder's account. *See* Exhibit A at 2; B at 1.

27.     Defendant's Account Contract never disclosed Defendant's policy and practice of allowing persons or entities other than the accountholder to authorize withdrawals, and Defendant's Account Contract never disclosed Defendant's policy and practice of charging more

than one Overdraft or Returned Item Fee for the same item or transaction not initiated by the accountholder.

**C.     Plaintiff's Agreement with Defendant.**

28.     In 2001, Plaintiff and Defendant entered into an agreement for Plaintiff to bank with Defendant, and Plaintiff opened a checking account with Defendant under the terms set forth in Defendant's Account Contract. *See* Exhibit A.

29.     Defendant's Fee Schedule provided that Defendant could only collect one Overdraft or Returned Item Fee "per item" or transaction. *See* Exhibit B at 1. As such, nothing in the Fee Schedule allows Defendant to charge Plaintiff multiple Overdraft or Returned Item Fees for the same item or transaction initiated by Plaintiff.

30.     Defendant's Account Contract provided that only an accountholder "has authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time." *See* Exhibit A at 2. As such, nothing in the Account Contract allows any persons or entities other than the accountholder to initiate withdrawals from the accountholder's account. *See id.*

31.     Upon information and belief, Defendant entered into the same or substantially similar contract with hundreds, if not thousands, of its other banking customers.

**D.     Plaintiff's Purchase Attempt, Subsequent Unauthorized Retried Payments, and Defendant's Unauthorized Overdraft and Returned Item Fees.**

32.     On October 3, 2016, Plaintiff attempted to make a purchase through Paypal in the amount of $14.99 without having sufficient funds to pay for the purchase. *See* Exhibit C at 2. Defendant refused to pay the "item" due to insufficient funds and charged Plaintiff a $33.00[3] "Insufficient Funds Charge" on October 4, 2016. *See id.*

---

[3] The charge of $33.00 is likely due to the fact the fees Defendant charged its customers for Overdraft and Returned Items increased from $33.00 to $35.00 between 2016 and 2017.

33.    Seven days later, on October 11, 2016, the same payment of $14.99 was retried without Plaintiff's authorization. *See id.* Defendant again rejected the payment due to insufficient funds and charged Plaintiff a *second* $33.00 "Insufficient Funds Charge." *See id.*

34.    While Plaintiff did authorize the October 3, 2016, Paypal purchase, and recognizes that he owed Defendant *one* $33.00 "Insufficient Funds Charge" from that transaction only, Plaintiff did not authorize the subsequent "RETRY PYMT PAYPAL WEB" on October 11, 2016; thus, Defendant breached its contract with Plaintiff by charging an additional "Insufficient Funds Charge" on a "RETRY" payment Plaintiff never authorized while allowing an unauthorize person or entity to initiate a withdrawal contrary to Defendant's Account Contract.

**E.    *The Imposition of Multiple Overdraft or Returned Item Fees for a Single Item or Transaction, including those not Made by or Authorized by an Accountholder, Violates Defendant's Account Contract.***

35.    Defendant's Account Contract does not indicate that it intends to charge multiple Overdraft or Returned Item Fees for a single item or transaction.

36.    As alleged herein, Plaintiff only took a single action to make a single payment; Plaintiff may therefore only be charged a single fee, yet was charged multiple Overdraft or Returned Item Fees for a single item or transaction. *See* Exhibit C at 1.

37.    Furthermore, Defendant's Account Contract expressly states that: "Unless clearly indicated otherwise on the account records, any of you [accountholders], *acting alone*, who signs to open the account or has authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time." *See* Exhibit A at 2.

38.    Defendant's Account Contract does not give power to any other person or entity to initiate withdrawals.

39.     Despite the plain language in Defendant's Account Contract, Defendant: (1) allowed a person or entity who is not an "accountholder" of Plaintiff's account to initiate a withdrawal attempt from Plaintiff's account, despite not being authorized to do so; and (2) charged Plaintiff an "Insufficient Funds Charge" fee for the unauthorized withdrawal made against a negative balance.

40.     Defendant provided no such disclosure that other persons or entities were entitled to repeatedly request that funds be withdrawn from Plaintiff's account *and* that those requests could trigger additional Overdraft or Returned Item Fees. In contracting with Plaintiff and the Class, Defendant promised that only accountholders could authorize withdrawals, but broke that promise by allowing persons or entities—other than accountholders—to repeatedly initiate withdrawal requests from Plaintiff's account. By honoring these withdrawal requests, and imposing Overdraft or Returned Item Fees when presented against negative balance, Defendant breached its contract with Plaintiff and the Class.

41.     Furthermore, the plain language of Defendant's Account Contract states that a single item or transaction is capable—at most—of incurring a *single* Overdraft or Returned Item Fee since it is still the same item or transaction Defendant is attempting to debit from the account

42.     The contract's plain language is supported by the Oxford English Dictionary, which defines "transaction" as "[a]n instance of buying or selling something." *Transaction*, Lexico.com, https://www.lexico.com/definition/transaction (last visited April 23 2020).

43.     Banks like Defendant that employ this abusive "multiple fee" practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here never did.

10

44.     The following are some examples from other banks and credit unions that make clear what Defendant was contractually required to do, if it was going to engage in charging multiple Overdraft or Returned Item Fees for the same item or transaction:

45.     First Hawaiian Bank engages in the same abusive practices as Defendant, but discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (last visited April 23, 2020) (emphasis supplied).

46.     Central Pacific Bank contracts unambiguously:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non- sufficient ('NSF') funds in your account, **may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds**.

*See*     https://www.cpb.bank/media/1618/fee-001-rev-10-24-2019-misc-fee-schedule.pdf     (last visited April 23, 2020) (emphasis supplied).

47.     Community Bank, N.A. unambiguously contracts:

> You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

*See*     https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure-FINAL-1.14.2020.pdf (last visited April 23, 2020) (emphasis supplied).

48.     Delta Community Credit Union contracts as follows:

The Credit Union reserves the right to charge you an overdraft/insufficient funds fee if you write a check or initiate an electronic transaction that, if posted, would overdraw your Checking Account. **Note that you may be charged an NSF fee each time a check or ACH is presented to us, even if it was previously submitted and rejected**.

*See* https://www.deltacommunitycu.com/home/forms/member-savings-services-disclosures-and-agreements.aspx (last visited April 23, 2020).

49.     Regions Bank contracts unambiguously states:

If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. **If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item**.

*See* https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf (last visited April 23, 2020) (emphasis added).

50.     In fact, Courts throughout the Country routinely conclude that banks using contracts with nearly identical to that utilized by Defendant here *breach their contracts* when they charge multiple overdraft or insufficient fund fees stemming from *one* transaction.  *See, e.g., Roberts v. Capital One, N.A.*, 719 Fed. Appx. 33 (2d Cir. 2017); *Morris v. Bank of America, N.A.*, No. 3:18-cv-00157, 2009 WL 1421166 (W.D.N.C. Mar. 29, 2019); *Tisdale v. Wilson Bank and Trust*, No. 19-400-BC (Davidson Co. Tenn. Chancery Court Oct. 17, 2019); *Tannehill v. Simmons Bank*, No. 3:19-cv-140-DPM (E.D. Ark. Oct. 21, 2019); *Perks, et al. v. TD Bank, N.A.*, No. 18-CV-11176 (S.D.N.Y. Mar. 17, 2020); *Ingram v. Teachers Credit Union*, No. 49D01-1908-PL-035431 (Ind. Comm. Ct. Feb. 18, 2020); *Noe v. City Nat'l Bank of W. Va.*, No. 3:19-cv-0690 (S.D. W. Va. Feb. 19, 2020); *Almon, et al. v. Independence Bank*, No. 19-Cl-00817 (McCracken Co. Ky. Cir. Ct. Mar. 18, 2020).

12

51.    At no time did Defendant provide any disclosure to Plaintiff and the Class to reflect that it intended to charge multiple Overdraft or Returned Item Fees stemming from the same item or transaction. In agreeing to charge Plaintiff and the Class one set of fees, and instead charging Plaintiff and the Class multiple fees for a single item or transaction, Defendant breached its contract with Plaintiff and the Class.

**F.     The Abusive Practices Alleged Herein Beaches Defendant's Duty of Good Faith and Fair Dealing.**

52.    A party to a contract, who possesses unilateral discretion over the implementation of a term in a contract is required to act in good faith when it acts to implement that term. In such circumstances, the party with the discretionary power is required to exercise that power and discretion in good faith and may not do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract. As a result, Defendant was prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Defendant had, and has, a duty to honor transaction requests in a way that is fair to its accountholders and is prohibited from exercising its discretion to gouge them with fees never disclosed or contemplated by its Account Contract.

53.    Here, Defendant provided itself numerous discretionary powers directly affecting its accountholders; namely, the power to impose Overdraft or Returned Item Fees stemming from a single item or transaction attempted against a negative balance. Contrary to the contract, however, Defendant—in its *sole discretion*, and in violation of its contract with Plaintiff and the Class—decided it would charge Plaintiff and the Class a second (or third) Overdraft or Returned Item Fee stemming from the same item or transaction, and would allow individuals other than the accountholders to initiate withdrawals from Plaintiff's account. At all times relevant hereto, Defendant did not exercise its discretion in good faith, opting instead to use the multiple retry

attempts in its own favor thereby prejudicing Plaintiff and the Class. Specifically, Defendant charged more than one Overdraft or Returned Item Fee for the same item or transaction *solely for Defendant's benefit*. In short, Defendant abused the power it has over its customers and their bank accounts by charging multiple Overdraft or Returned Item Fees for the same item or transaction. In doing so, Defendant breached the implied covenant of good faith and fair dealing inherent in each and every contract that required it to act with good faith towards Plaintiff and the Class.

54.    The decision to charge Plaintiff and the Class Overdraft or Returned Item Fees is *solely* reserved for Defendant. Specifically, it was Defendant, and not Plaintiff or the Class, that held the power to charge Overdraft or Returned Item Fees.

55.    Utilizing this power, Defendant exercised its discretion in its own favor—and to the prejudice of Plaintiff and the Class—by charging Plaintiff and the Class multiple Overdraft or Returned Item Fees every time the same "item" or "transaction" was resubmitted to the bank for payment against a negative balance, including those instances where a person or entity not authorized as an accountholder attempted to initiate a withdrawal from Plaintiff's account. Defendant's decision to unilaterally enforce this policy and practice directly lead to Plaintiff and the Class being charged multiple Overdraft or Returned Item Fees stemming from the same item or transaction. As a direct and proximate result, Defendant breached the implied covenant of good faith and fair dealing.

## CLASS ACTION ALLEGATIONS

56.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class of individuals defined as:

> *All persons who, within the applicable statute of limitations period, were charged multiple Overdraft or Returned Item Fees from a single item or transaction.*

57.     Plaintiff reserves the right to modify or amend the definition of the proposed Class or to add subclasses if necessary, before this Court determines whether class certification is appropriate.

58.     Excluded from the Class is: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class members.

### A.     *The Rule 23 Class.*

59.     This action is brought and may be properly maintained on behalf of each member of the Class pursuant to Fed. R. Civ. P.

60.     *Numerosity of the Class:* The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of Class members is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members based on the fact that Defendant has approximately 11 branches throughout Michigan with an estimated $420 million in assets.

61.     Defendant has a database, or other documentation, of its customers' transactions and account enrollment documents. These databases or documents can be analyzed by an expert to ascertain which of Defendant's customers have been harmed by its practices and thus qualify as Class members. Further, the Class definitions identify unnamed Plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover damages from Defendant. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to the Class through notice published in newspapers or other publications.

62.    *Commonality:* This action involves common questions of law and fact. The questions of law and fact common to both Plaintiff and the Class include, but are not limited to, the following:

a.    Whether Defendant violated its contractual relationship with Plaintiff and the Class by charging multiple Overdraft or Returned Item Fees for a single item or transaction;

b.    Whether Defendant violated its contractual relationship with Plaintiff and the Class by charging multiple Overdraft or Returned Item Fees for a single item or transaction not initiated by an authorized accountholder;

c.    Whether Defendant breached its covenant of good faith and fair dealing with Plaintiff and the Class by charging multiple Overdraft or Returned Item Fees for a single item or transaction;

d.    Whether Defendant breached its covenant of good faith and fair dealing with Plaintiff and the Class by charging multiple Overdraft or Returned Item Fees for a single item or transaction not initiated by an authorized accountholder;

e.    Whether the Account Contract's plain language limited the number of times Defendant could charge Plaintiff and the Class Overdraft or Returned Item Fees stemming from the same item or transaction.

f.    If the Account Contract's terms and conditions were not plain, whether they we so ambiguous that Plaintiff's and the Class' reasonable interpretation of the Account Contract should be interpreted to limit the number of times it could charge Plaintiff and the Class Overdraft or Returned Item Fees;

g.    The proper method or methods to determine and measure Plaintiff's and the Class' damages; and

h.    The declaratory or injunction relief to which Plaintiff and the Class are entitled to.

63.    *Typicality:* Plaintiff's claims are typical of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and the Class are substantially the same because all of the relevant agreements between Defendant and its accountholders were identical as to all relevant terms, and also because the challenged practices

of charging customers multiple Overdraft or Returned Item Fees for a single item or transaction are uniform for Plaintiff and the Class. Accordingly, in pursuing his own self-interest in litigating his claims, Plaintiff will also serve the interests of the Class.

64.    *Adequacy:* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and the Class that would make class certification inappropriate. Additionally, Plaintiff's Counsel are competent to advance the interests of the Class having been designated as Lead Counsel in dozens, if not hundreds, of Class cases. Plaintiff and his Counsel intend to prosecute this action vigorously.

65.    *Predominance and Superiority:* The matter is properly maintained as a class action under Fed. R. Civ. P. because the common questions of law and fact identified herein, and to be identified through discovery, predominate over questions that may affect only individual Class members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and the Class to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would

lead to repetitious trials of the numerous common questions of law and fact. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiff and the Class will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

66.    Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendant's own business records or electronic media can be utilized for the notice process. To the extent any further notices may be required, Plaintiff anticipates the use of additional media or mailings.

**B.    The Fed. R. Civ. P. 23 Injunctive Relief Class.**

67.    Plaintiff restates and adopts the allegation set forth above with the sole exception of amending the class definition as follows:

> *All current Accountholders of West Shore Bank subject to multiple Overdraft or Returned Item Fees from a single item or transaction.*

68.    As noted above, in implementing its contract with its customers, Defendant charges multiple Overdraft or Returned Item Fees any time a single item or transaction is retried against a negative balance. This conduct violates the Account Contract's express terms and conditions.

69.    There is no reason to believe Defendant intends to alter its conduct so as to comply with the Account Contract's express terms and conditions. As a result, each member of the Injunctive Relief Class—as an accountholder with Defendant—continues to be exposed to Defendant's wrongful conduct. Plaintiff and the Injunctive Relief Class seeks to enjoin Defendant from perpetuating the wrongful conduct alleged herein while continuing to collect fees which Defendant is not entitled at the expense of Plaintiff and the Injunctive Relief Class.

70.     Because Defendant continues to act in an unlawful manner generally applicable to Plaintiff and the Injunctive Relief Class (namely, the ongoing breach of contract), final injunctive relief is appropriate with respect to Injunctive Relief Class as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

71.     Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

72.     Plaintiff and Defendant contracted for checking account services, as embodied in Defendant's Account Contract. *See generally* Exhibits A and B.

73.     Defendant's contract with Plaintiff and the Class specified Defendant could charge *one* Overdraft or Returned Item Fee for the same item or transaction. *See* Exhibit B at 1.

74.     In actuality, Defendant charged Plaintiff and the Class multiple Overdraft or Returned Item Fees for the same item or transaction and allowed persons or entities other than accountholders to initiate withdrawals from the accountholder's accounts.

75.     Defendant breached its contract with Plaintiff and the Class through its policies and practices as alleged herein.

76.     Plaintiff and members of the Class sustained monetary damages as a result of each of Defendant's breaches in an amount to be determined at trial.

77.     Plaintiff and the Class seek monetary damages in the amount of fees paid by Plaintiff and the Class to Defendant in excess of those provided by the Account Contract in an amount to be determined at trial.

78.     Plaintiff and the Injunctive Relief Class further seek an injunction prohibiting Defendant from continuing to collect such fees in violation of its contract with Plaintiff and the Injunctive Relief Class, and for other such relief as deemed appropriate by the Court.

### COUNT II
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Class)

79.     Plaintiff realleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

80.     Plaintiff and Defendant contracted for banking services as embodied in Defendant's Account Contract. *See generally* Exhibits A and B.

81.     The implied covenant of good faith and fair dealing governs every contract.  The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

82.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

83.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts. This is particularly true where one party (here, Defendant) maintains sole discretion over the decision to implement a particular term or condition of the contract—in this case the decision to charge multiple Overdraft or Returned Item Fees for a single item or transaction.

84.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes the conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

85.     The material terms of the contracts therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class' rights and benefits under the Account Contracts.

86.     Defendant breached the covenant of good faith and fair dealing through its policies and practices as explained herein; namely, its unilateral decision to charge Plaintiff and the Class multiple Overdraft or Returned Item Fees stemming from the same item or transaction, and allowing persons or entities other than an accountholder to initiate withdrawals from Plaintiff's account.

87.     Each of Defendant's actions were done in bad faith and were arbitrary and capricious.

88.     Plaintiff and the Class sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing in an amount to be determined at trial.

89.     Plaintiff and the Class seek monetary damages in the amount of fees paid by Plaintiff and the Class to Defendant in excess of those represented by Defendant that it would collect in an amount to be determined at trial.

90.     Plaintiff and the Injunctive Relief Class further seek an injunction prohibiting Defendant from continuing to collect such fees in violation of the covenant of good faith and fair dealing, and for other such relief as deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

A.     Certifying the proposed Class and appointing the Plaintiff as representative of the Class, and appointing counsel for Plaintiff as Lead Counsel for the Class;

B.     Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

C.     Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

D.     Enjoining Defendant from continuing to collect fees in violation of its contract with its accountholders or Michigan Law, and ordering Defendant to clearly disclose its intended fee policies;

E.     Awarding actual or compensatory damages in an amount according to proof;

F.     Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

G.     Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

H.     Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: April 27, 2020                    Respectfully submitted,

BY:  _Kevin J. Stoops_
Kevin J. Stoops (P64371)

Jason J. Thompson (P47184)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan  48076
(248) 355-0300
kstoops@sommerspc.com
jthompson@sommerspc.com


Timothy J. Becker (MN Bar No. 0256663)
(*pro hac vice* pending*)*
Jacob Rusch (MN Bar No. 0391892)
(*pro hac vice* pending*)*
Jennell K. Shannon (MN Bar. No. 0398672)
(*pro hac vice* pending*)*
**JOHNSON BECKER PLLC**
444 Cedar Street, Suite 1800
St. Paul, Minnesota 55101
(612) 436-1804 (phone)
(612) 436-4801 (fax)
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com
jshannon@johnsonbecker.com

*Attorneys for Plaintiff*